**William Sullivan COE,**
**Plaintiff-Appellant,**

v.

**Paul M. BOGART, Superintendent of Schools of Sevier County, et al., Defendants-Appellees.**

**No. 74–1832.**

United States Court of Appeals, Sixth Circuit.

July 15, 1975.

Charles Hampton White, Conelius, Collins, Higgins & White, Nashville, Tenn., for plaintiff-appellant.

Michael Y. Rowland, Knoxville, Tenn., William R. Holt, Jr., Sevierville, Tenn., for defendants-appellees.

Before CELEBREZZE, MILLER and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

This is an appeal in an action brought under 42 U.S.C. § 1983 and 28 U.S.C. § 1343, in which appellant William S. Coe alleged that he was deprived of procedural due process under the Fourteenth Amendment when he was transferred from his position as principal of Sevier County High School without being furnished any statement of charges against him or opportunity for a hearing before the County School Board. Coe had been employed in the county school system for 36 years, the last twelve of them as principal of its largest high school.

Following a trial on the merits, District Judge Robert L. Taylor, in an opinion reported at 377 F.Supp. 310 (E.D. Tenn.1974), found that plaintiff was a tenured teacher with the Sevier County system within the meaning of Tennessee's Teacher Tenure Act, T.C.A. § 49–1401 *et seq.* He further found that the action of the defendant school board "constituted a routine transfer of personnel within a school system in the interest of administrative efficiency and did not amount to a punitive demotion or a deprivation of property" within the meaning of *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed. 548 (1972) and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

Our review of the trial record satisfies us that the findings of fact as reported by the trial judge are not clearly erroneous. In accepting those findings, therefore, we accept as true the claim of the Sevier County Board that when, through its chairman, Mrs. Hickey, it informed Mr. Coe that he would not be retained as principal but would be reassigned, it was motivated by an honest belief that the high school could function more effectively under different leadership, and did not intend to impugn the integrity of Mr. Coe or to force him out of the system by compelling him to accept a demotion or lower compensation. The record amply supports the finding of the district judge that until the Board learned that Mr. Coe had accepted alternate employment, it endeavored to place him in another post within the system which would be acceptable to him. Further, it appears that Coe failed to request any formal written statement from the Board, or a hearing, and that he in fact expressed an interest in the reassignment possibilities then being explored, which included his being offered a job as Director of Vocational Education if adequate funding of that position could be obtained.

Since the trial judge's findings are fully supported by the evidence, the sole issue which remains is whether under those facts, appellant Coe, as a tenured employee, was deprived of a "property" right within the meaning of the Fourteenth Amendment. We note that Coe has made no claim that the Board's ac-

tion in transferring him deprived him of any "liberty" right afforded protection by the federal Constitution.

The Supreme Court, in *Board of Regents v. Roth, supra,* and *Perry v. Sindermann, supra,* endeavored to define the extent to which the interests of public employees, particularly teachers, may be characterized as "property" or "liberty" interests, subject to the protection of the due process clause of the Fourteenth Amendment. In *Roth,* the Court quoted from Mr. Justice Frankfurter's dissent in *National Ins. Co. v. Tidewater Co.,* 337 U.S. 582, 646, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949) as follows:

> "Liberty" and "property" are broad and majestic terms. They are among the "[g]reat [constitutional] concepts . . . purposely left to gather meaning from experience. . . ." 408 U.S. at 571, 92 S.Ct. at 2706.

While noting that the constitutional concept of "property" is necessarily ever changing, the Court did offer guidance to lower courts when they may be faced with the question of whether a litigant has been unconstitutionally deprived of a "property" right without being afforded the procedural rights guaranteed by the Fourteenth Amendment:

> The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests—property interests—may take many forms.

> \*  \*  \*  \*  \*  \*

> Certain attributes of "property" interests protected by procedural due process emerge from these decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must instead, have a legitimate claim of entitlement to it. 408 U.S. at 576, 577, 92 S.Ct. at 2708, 2709.

■ In *Roth,* the Court further noted that the Constitution itself does not create property interests, but rather such rights are created and their dimensions defined by independent sources such as state law. We look then to Tennessee law to understand the nature of the interest asserted by Coe. We emphasize, however, that we do not interpret *Roth* as holding every interest accorded a tenured teacher by state law to be a protected "property" interest within the meaning of the Fourteenth Amendment. The purpose of the procedural guarantees of the Fourteenth Amendment is to protect fundamental rights, not to justify the intrusion of the federal judicial system into all those myriad differences which are bound to arise between public employees and the governmental agency which employs them.

■ As a principal, Coe came within the definition of "teacher" in T.C.A. § 49–1401 and thus had tenure under the Teacher Tenure Act, Nevertheless, T.C.A. § 49–1401(4) provides that:

> Administrative and supervisory personnel shall have tenure as teachers and not necessarily tenure in the specific type of position in which they may be employed.

Further, in T.C.A. § 49–1411 it is provided that:

> The superintendent, with the approval of the board, when necessary to the efficient operation of the school system, may transfer a "teacher" from one location to another within the school system, or from one type of work to another for which he is qualified and certificated. Such a transfer can be made only by the concurrent action of the superintendent and the board. [Acts 1951, ch. 76, § 10 (Williams, § 2345.10); 1957, ch. 202, § 1; 1965, ch. 196, § 1; 1969, ch. 286, § 1; 1970 (Adj.S.), ch. 480, § 1.]

Coe's transfer here was approved by both the Board and the Superintendent of Schools. The above-cited statutes make it manifestly clear that the Tennessee legislature, in enacting the Teacher Tenure Act, did not intend that a teacher or principal have an entitlement to the specific job to which he is assigned. See *State v. Yoakum,* 201 Tenn.

180, 297 S.W.2d 635 (1956). In such circumstances we would be loath to hold that Coe had a constitutional "property" right in his position since, as noted earlier, we do not believe that plaintiff's federal constitutional rights are necessarily co-extensive with his rights under the Act. We thus conclude that Judge Taylor correctly dismissed the claim.

■ Coe also contends that Judge Taylor abused his discretion in refusing to consider his pendent claim under the Teacher Tenure Act. Although an analysis of Coe's federal claim required reference to Tennessee law, particularly the Teacher Tenure Act, we agree with Judge Taylor that a determination of the merits of that claim should be more appropriately made by the state courts. *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

Coe has made certain other claims of error which, after thorough examination, we find to be without merit. Accordingly, the judgment of the district court is affirmed. Costs to appellees.