**ESTATE OF Silme G. DOMINGO, et al., Plaintiffs,**

**v.**

**REPUBLIC OF THE PHILIPPINES, et al., Defendants.**

**No. C82–1055VR.**

United States District Court, W.D. Washington.

Aug. 29, 1988.

---

Michael Z. Withey, Schroeter, Goldmark & Bender, James A. Douglas, Gibbs, Douglas, Theiler & Drachler, James Caughlan, Seattle, Wash., for plaintiffs.

Vincent Garvey, Arthur Goldberg, U.S. Dept. of Justice, Civil Div., Washington, D.C., for federal defendants.

Susan Barnes, Asst. U.S. Atty., James Grubb, Seattle, Wash., for Jimmie Ramil.

Anthony Savage, Seattle, Wash., for Baruso.

William Bender, Seattle, Wash., amicus curiae for ACLU, Nat'l Lawyers Guild, Church Council of Greater Seattle, American Friends Service Committee, Catholic Archdiocese, Nat'l Conference of Black Lawyers.

Stew Cogan, Mills & Cogan, Seattle, Wash., for Liam.

George E. Greer, Heller, Ehrman, White & McAuliffe, Seattle, Wash., for Rep. of Philippines.

Jeffrey Steinborn, Seattle, Wash., Patrick Hallinan, Katherine Alfieri, Hallinan & Poplack, San Francisco, Cal., for Malabed.

Stephen V. Bomse, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for Philippines.

Thomas P. Steindler, Anderson, Hibey, Nauheim & Blair, Washington, D.C., John J. Bartko, Robert H. Bunzel, Bartko, Welsh, Tarrant & Miller, San Francisco, Cal., James P. Donohue, Merkel Caine Donohue & Duvall, Seattle, Wash., for Marcos.

## ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on motions to dismiss filed by defendant Leonile Malabed and defendants Ferdinand and Imelda Marcos. Having reviewed the motions, together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

### I. FACTS

Prior orders of this court have summarized the underlying facts and allegations in this matter. *See* Order Granting and Denying In Part Defendant Malabed's Motion to Dismiss ("Malabed Order"), entered October 15, 1987; Order Granting Reinstatement of Ferdinand and Imelda Marcos as Defendants ("Marcos Order"), entered November 6, 1987. Briefly put, plaintiffs allege that defendants planned, executed and covered up the murder of two Filipino union leaders, Gene Viernes and Silme Domingo, who openly and actively opposed the Marcos regime. Plaintiffs filed this suit in September 1981. On December 23, 1982, the court dismissed the Marcoses from the suit, ruling that immunity granted to heads of state protected the Marcoses from liability.

On October 15, 1987, the court granted defendant Malabed's motion to dismiss plaintiffs' claims of discrimination under 42 U.S.C. §§ 1985 and 1986. On November 6, 1987, the court reinstated the Marcoses as defendants, holding that once they left office, the Marcoses could not claim immunity as heads of state. Defendants Malabed and the Marcoses now move to dismiss this suit for lack of subject matter jurisdiction. In addition, the Marcoses seek reconsideration of the denial of head of state immunity. On August 23, 1988, this court held oral argument on defendants' motions.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

Defendants contend that with the dismissal of plaintiffs' federal discrimination claims, plaintiffs may no longer assert federal question jurisdiction under 28 U.S.C. § 1331. In response, plaintiffs acknowledge that their third amended complaint does not allege a federal question and argue instead that this court has subject matter jurisdiction on three grounds: (1) pendant party jurisdiction under *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed. 2d 276 (1976), (2) pendant jurisdiction over plaintiffs' state law claims, and (3) diversity jurisdiction. All three grounds, however, present the court with a new theory of subject matter jurisdiction.

■ Under 28 U.S.C. § 1653, "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." Moreover, the Ninth Circuit has advised that "dismissing a case for want of jurisdiction is not favored when an alternative basis for jurisdiction exists even if the alternative basis was not asserted in the trial court." *Fidelity & Cas. Co. v. Reserve Ins. Co.*, 596 F.2d 914, 918 (9th Cir. 1979). It would serve no useful purpose to dismiss this case, now pending six years, solely for the reason that plaintiffs' basis for jurisdiction has changed. Therefore, plaintiffs may amend their allegations of jurisdiction.

■ The court finds sufficient cause to exercise pendant jurisdiction over plaintiffs' state law claims, and accordingly does not discuss the alternate grounds proposed by plaintiffs. The Ninth Circuit in *In Re Nucorp Energy Securities Litigation*, 772 F.2d 1486 (9th Cir.1985) established the following test to determine whether pendant jurisdiction exists:

> Pendant jurisdiction exists where there is a sufficiently substantial federal claim to confer federal jurisdiction in the first place, and a 'common nucleus of operative fact' between the state and federal claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 [86 S.Ct. 1130, 1138, 16 L.Ed.2d 218] (1966).

*Nucorp*, 772 F.2d at 1490. The parties contest the first prong of the test—whether plaintiffs' federal civil rights claims were sufficiently substantial to confer federal jurisdiction here.

The court finds that although plaintiffs' claims under 42 U.S.C. §§ 1985(3) and 1986 were not meritorious, they were also not "absolutely devoid of merit or obviously frivolous." *Id.* In its Malabed Order and subsequent Order on Plaintiffs' Motion for Reconsideration, dated December 14, 1987, the court concluded that plaintiffs had not alleged sufficient racial or class-based animus to state a claim under §§ 1985(3) and 1986, but the court's ruling was by no means in a settled area of law, especially in the case of discrimination against Filipinos. Furthermore, plaintiffs' federal claims were not "an obvious bootstrap effort to obtain federal review of issues which are in the domain of the state courts." *Morse v. Wozniak*, 565 F.2d 959, 960 (6th Cir.1977). Thus, plaintiffs' federal claims were sufficiently substantial to confer federal jurisdiction. *Nucorp*, 772 F.2d at 1490.

The court must consider next whether the factors of judicial economy, convenience, fairness, and comity support the exercise of pendant jurisdiction over plaintiffs' state law claims. The United States Supreme Court in *Carnegie–Mellon University v. Cohill*, ―― U.S. ――, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) recently reaffirmed the pragmatic purpose of this doctrine.

> As articulated by *Gibbs*, the doctrine of pendant jurisdiction ... is a doctrine of flexibility, designed to allow courts to deal with cases involving pendant claims in the manner that most sensibly accommodates a range of concerns and values.

*Carnegie–Mellon*, ―― U.S. at ――, 108 S.Ct. at 619. Certainly, in the usual case the balance of factors will point toward declining to exercise jurisdiction, *see e.g. Carnegie–Mellon*, ―― U.S. at ―― n. 7, 108 S.Ct. at 619 n. 7, but the court's concern here is whether retention of plaintiffs' state claims makes sense in light of the competing values which the doctrine serves.

Dismissal of plaintiffs' state claims against defendants Malabed and Marcoses would have the practical effect of severing this case in two. Under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, federal courts exercise exclusive jurisdiction over claims against foreign states, *see* 28 U.S.C. § 1330, and thus, plaintiffs may sue defendant Republic of Philippines *only* in federal court. If this court dismisses the remaining claims against defendants Malabed and Marcoses, plaintiffs would be required to prosecute two actions, one in state court, one in federal, which would involve identical issues, witnesses, and evidence. This court finds the duplication of a case of this magnitude in state court to be untenable and, most importantly, the exact outcome which the doctrine of pendant jurisdiction is designed to prevent. Retention of plaintiffs' state law claims clearly promotes the values of judicial economy, convenience, and fairness.

The Marcoses contend, however, that since this suit may require the court to navigate in the uncharted waters of state law, comity between the state and federal courts argues in favor of severing the state claims. *See Dezell v. Day Island Yacht Club*, 796 F.2d 324 (9th Cir.1986). This court is unpersuaded. Defendants can only speculate as to the difficulty and complexity of the future legal issues in this suit. Furthermore, unlike the state discrimination statutes at issue in *Dezell*, federal courts routinely apply state tort law in diversity cases. Although this court is concerned that it not complicate the administration of state law, the court does not believe that the potential occurrence of difficult legal issues outweighs the practical advantages to maintaining one suit in federal court.

Finally, defendants contend that pendant jurisdiction is appropriate only in cases which have some federal interest at stake. *See Bale v. General Telephone Co. of California*, 795 F.2d 775 (9th Cir.1986) (state claims implicate doctrine of federal preemption); *McCarthy v. Mayo*, 827 F.2d 1310 (9th Cir.1987) (state claims turn on questions about a federal grand jury indict-

ment). To the extent that defendants are correct, the court finds ample federal issues implicated by the state law claims against defendants, namely that any alleged conspiracy involving the Republic of Philippines by necessity implicates the Foreign Sovereign Immunities Act and questions of international law. Defendants' argument actually proves the contrary point: one federal forum, applying both state and federal law, is preferable to a severed trial in two courts. Therefore, the court shall exercise pendant jurisdiction over plaintiffs' claims against defendants Malabed and Marcoses.

### B. *Reconsideration of the Marcos Order*

The Marcoses contend that this court erred as a matter of law when it reinstated them as defendants in this suit. First, the Marcoses claim that the law of the case doctrine barred the court's modification of its July 14, 1983 order of dismissal. Second, the Marcoses assert that head of state immunity extends to foreign rulers after they have stepped down from office and therefore protects the Marcoses from liability here. The court finds both arguments unpersuasive and reaffirms its ruling that the Marcoses are not entitled to immunity.

In *Handi Inv. Co. v. Mobil Oil Corp.*, 653 F.2d 391 (9th Cir.1981), the Ninth Circuit held that "although 'law of the case' is not an 'inexorable command,' prior decisions of legal issues should be followed unless there is substantially different evidence at a subsequent trial, new controlling authority, or the prior decision was clearly erroneous and would result in injustice." *Id.* at 392. The Marcoses contend that since "changed circumstances" is not one of the three categories, the court may not revise its prior orders on this ground.

Defendants have misconstrued the purpose of the law of the case doctrine. As the United States Supreme Court held in *Arizona v. California*, 460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983), "law of the case directs a court's discretion, it does not limit the tribunal's power." *Id.* at 618,

103 S.Ct. at 1391. Furthermore, the Ninth Circuit in *Handi* stated that the doctrine is not an inexorable command. *Handi,* 653 F.2d at 392. In its Marcos Order, this court ruled that the fact that the Marcoses were no longer heads of state warranted revision of the earlier ruling. This court finds nothing in the law of the case doctrine which prevents such revision.

The Marcoses also seek reconsideration of this court's denial of head of state immunity. According to the Marcoses, head of state immunity protects foreign rulers from liability for decisions made while in office, even after they leave office. The purpose of this form of immunity, they contend, is in part to insulate foreign leaders from the chilling effect of being subjected to the jurisdiction of foreign courts at some future date. In addition, the Marcoses contend that the United States State Department's suggestion of immunity filed in 1982 mandates a finding of immunity here.

The court finds insufficient grounds to justify reconsideration. First, although the State Department filed a suggestion of immunity when Marcos was president, it has not filed a new suggestion of immunity since Marcos left office. *See Domingo v. Republic of Philippines,* 808 F.2d 1349, 1351 (9th Cir.1987) ("neither the State Department, nor the Philippine government has interceded on Marcoses' behalf in the present dispute over his deposition"). The suggestion of immunity had significance when filed in 1982, but has none given the change of circumstance.

The failure of both the United States and Philippine governments to request immunity for the Marcoses underscores the court's rationale for refusing to extend head of state immunity here. Since the purpose of head of state immunity is to avoid the disruption of foreign relations, the original reason for immunizing the Marcoses—protecting the relations between the United States and the Marcos' regime—is no longer present. Head of state immunity serves to safeguard the relations among foreign governments and their leaders, not as the Marcoses assert, to protect former heads of state regardless of their lack of official status.

Finally, the court finds compelling the Ninth Circuit's statement that Marcos "is now an alien with no official status who has chosen to take up residence in this country." *Domingo,* 808 F.2d at 1351. This court believes it is neither inequitable nor disturbing that a foreign official who takes refuge in the United States must defend the legality of private acts committed in the United States.

THEREFORE, defendant Malabed's and defendants Marcos' motions to dismiss are DENIED.